**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

| | |
|---|---|
| OBSIDIAN FINANCE GROUP, LLC; KEVIN D. PADRICK, *Plaintiffs-Appellees*, v. CRYSTAL COX, *Defendant-Appellant*. | No. 12-35238 D.C. No. 3:11-cv-00057-HZ |
| OBSIDIAN FINANCE GROUP, LLC; KEVIN D. PADRICK, *Plaintiffs-Appellants*, v. CRYSTAL COX, *Defendant-Appellee*. | No. 12-35319 D.C. No. 3:11-cv-00057-HZ OPINION |

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, District Judge, Presiding

Argued and Submitted
November 6, 2013—Portland, Oregon

Filed January 17, 2014

2          OBSIDIAN FINANCE GROUP V. COX

Before: Arthur L. Alarcón, Milan D. Smith, Jr.,
and Andrew D. Hurwitz, Circuit Judges.

Opinion by Judge Hurwitz

## SUMMARY[*]

### Defamation

The panel affirmed in part and reversed in part the district court's judgment awarding compensatory damages to a bankruptcy trustee on a defamation claim against an Internet blogger.

The panel held that *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974) (holding that the First Amendment required only a "negligence standard for private defamation actions"), is not limited to cases with institutional media defendants. The panel further held that the blog post at issue addressed a matter of public concern, and the district court should have instructed the jury that it could not find the blogger liable for defamation unless it found that she acted negligently. The panel held that the bankruptcy trustee did not become a "public official" simply by virtue of court appointment, or by receiving compensation from the court. The panel remanded for a new trial on the blog post at issue, and affirmed the district court's summary judgment on the other blog posts that were deemed constitutionally protected opinions.

_____

[*] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Eugene Volokh (argued), Mayer Brown LLP, Los Angeles, California, for Defendant-Appellant/Cross-Appellee.

Robyn Ridler Aoyagi, Steven M. Wilker (argued), and David S. Aman, Tonkon Torp LLP, Portland, Oregon, for Plaintiffs-Appellees/Cross-Appellants.

Bruce D. Brown, Gregg P. Leslie, and Jack S. Komperda, Arlington, Virginia, for Amicus Curiae The Reporters Committee for Freedom of the Press.

Thomas C. Goldstein, Goldstein & Russell, P.C., Washington, D.C., for Amicus Curiae SCOTUSblog.com.

**OPINION**

HURWITZ, Circuit Judge:

This case requires us to address a question of first impression: What First Amendment protections are afforded a blogger sued for defamation? We hold that liability for a defamatory blog post involving a matter of public concern cannot be imposed without proof of fault and actual damages.

**I.**

Kevin Padrick is a principal of Obsidian Finance Group, LLC (Obsidian), a firm that provides advice to financially distressed businesses. In December 2008, Summit Accommodators, Inc. (Summit), retained Obsidian in connection with a contemplated bankruptcy. After Summit

4          OBSIDIAN FINANCE GROUP V. COX

filed for reorganization, the bankruptcy court appointed Padrick as the Chapter 11 trustee. Because Summit had misappropriated funds from clients, Padrick's principal task was to marshal the firm's assets for the benefit of those clients.

After Padrick's appointment, Crystal Cox published blog posts on several websites that she created, accusing Padrick and Obsidian of fraud, corruption, money-laundering, and other illegal activities in connection with the Summit bankruptcy. Cox apparently has a history of making similar allegations and seeking payoffs in exchange for retraction. *See* David Carr, *When Truth Survives Free Speech*, N.Y. Times, Dec. 11, 2011, at B1. Padrick and Obsidian sent Cox a cease-and-desist letter, but she continued posting allegations. This defamation suit ensued.

### A.

The district court held that all but one of Cox's blog posts were constitutionally protected opinions because they employed figurative and hyperbolic language and could not be proved true or false. *Obsidian Fin. Grp., LLC v. Cox*, 812 F. Supp. 2d 1220, 1232–34 (D. Or. 2011). The court held, however, that a December 25, 2010 blog post on bankruptcycorruption.com made "fairly specific allegations [that] a reasonable reader could understand . . . to imply a provable fact assertion"—i.e., that Padrick, in his capacity as bankruptcy trustee, failed to pay $174,000 in taxes owed by Summit. *Id.* at 1238. The district judge therefore allowed that single defamation claim to proceed to a jury trial. The jury found in favor of Padrick and Obsidian, awarding the former $1.5 million and the latter $1 million in compensatory damages.

**B.**

In a pretrial memorandum, Cox—then representing herself—raised two First Amendment arguments concerning the liability standards that should govern this case. First, Cox argued that because the December 25 blog post involved a matter of public concern, Padrick and Obsidian had the burden of proving her negligence in order to recover for defamation, and that they could not recover presumed damages absent proof that she acted with *New York Times Co. v. Sullivan* "actual malice"—that is, that she knew the post was false or acted with reckless disregard of its truth or falsity. *See* 376 U.S. 254, 280 (1964). Cox alternatively argued that Padrick and Obsidian were public figures, and thus were required to prove that Cox made the statements against them with actual malice. *Id.*

On the day before trial, the district court rejected both arguments in an oral decision. In a written decision, issued two days later, the judge explained that Padrick and Obsidian were not required to prove either negligence or actual damages because Cox had failed to submit "evidence suggestive of her status as a journalist." *Obsidian Fin. Grp., LLC v. Cox*, No. 3:11-cv-00057-HZ, 2011 WL 5999334, at *5 (D. Or. Nov. 30, 2011). The district court also ruled that neither Padrick nor Obsidian was an all-purpose public figure or a limited public figure based upon Padrick's role as a bankruptcy trustee, finding that they had not injected themselves into a public controversy, but rather that Cox had "created the controversy . . . ." *Id.* at *4.

After closing arguments, the district court instructed the jury that under Oregon law, "Defendant's knowledge of whether the statements at issue were true or false and

6          OBSIDIAN FINANCE GROUP V. COX

defendant's intent or purpose in publishing those statements are not elements of the claim and are not relevant to the determination of liability." The court further instructed that the "plaintiffs are entitled to receive reasonable compensation for harm to reputation, humiliation, or mental suffering even if plaintiff does not present evidence that proves actual damages . . . because the law presumes that the plaintiffs suffered these damages." The jury verdicts in favor of Padrick and Obsidian followed.

Cox—now represented by counsel—moved for a new trial. In its order denying that motion, the district court acknowledged that Cox had argued that "she was entitled to certain First Amendment protections, including requiring plaintiffs to establish liability by proving that [she] acted with some degree of fault, whether it be negligence or 'actual malice.'" *Obsidian Fin. Grp., LLC v. Cox*, No. 3:11-cv-00057-HZ, 2012 WL 1065484, at *7 (D. Or. Mar. 27, 2012). But, the judge again rejected Cox's arguments that Padrick and Obsidian "were public figures, and that the blog post referred to a matter of public concern," and thus concluded that a showing of fault was not required to establish liability, and that presumed damages could be awarded. *Id.* at *4.

Cox appeals from the denial of her motion for a new trial. Obsidian and Padrick cross-appeal, contending that their defamation claims about the other blog posts should have gone to the jury. We have jurisdiction over both appeals pursuant to 28 U.S.C. § 1291. We reverse the denial of a motion for a new trial if the district court has made a mistake of law. *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007). We "review de novo whether a jury instruction misstates the law." *Dream Games of Ariz., Inc. v. PC Onsite*, 561 F.3d 983, 988 (9th Cir. 2009) (quotation marks and

citation omitted).   And we review a grant of summary judgment de novo. *Doe No. 1 v. Reed*, 697 F.3d 1235, 1238 (9th Cir. 2012).

## II.

Cox does not contest on appeal the district court's finding that the December 25 blog post contained an assertion of fact; nor does she contest the jury's conclusions that the post was false and defamatory.  She challenges only the district court's rulings that (a) liability could be imposed without a showing of fault or actual damages and (b) Padrick and Obsidian were not public officials.

### A.

After the district court's orders on the issues raised in her pretrial memorandum, Cox—then still representing herself—did not propose specific jury instructions.  When asked by the district court whether she wished to do so, she stated that she had no objection to the court's proposed jury instructions, which were consistent with its earlier First Amendment rulings.  Padrick and Obsidian argue that Cox therefore waived any First Amendment objections to the jury instructions.

We disagree.   To preserve an argument about a jury instruction for appeal, a party generally must make a specific contemporaneous objection to the instruction "on the record, stating distinctly the matter objected to and the grounds for the objection." Fed. R. Civ. P. 51(c)(1).  But, "when the trial court has rejected plaintiff's posted objection and is aware of the plaintiff's position, further objection by the plaintiff is unnecessary." *Loya v. Desert Sands Unified Sch. Dist.*, 721

F.2d 279, 282 (9th Cir. 1983) (citing *Brown v. Avemco Inv. Corp.*, 603 F.2d 1367 (9th Cir. 1979)); *see also Dorn v. Burlington N. Santa Fe R.R. Co.*, 397 F.3d 1183, 1189 (9th Cir. 2005) ("In light of its definitive ruling on a motion in limine and subsequent warning about rehashing the issue, the district court was fully informed of Burlington's position on the jury instructions . . . .").

The district court here was fully informed before trial of Cox's First Amendment arguments and had rejected them definitively before the close of evidence. "[A]ny further objection would have been superfluous and futile . . . ." *Dorn*, 397 F.3d at 1189. Indeed, in denying Cox's new trial motion, the district judge specifically noted that he had instructed the defendant to raise her legal arguments in her trial memorandum, and that he understood those arguments to be that "she was entitled to certain First Amendment protections, including requiring plaintiffs to establish liability by proving that defendant acted with some degree of fault, whether it be negligence or 'actual malice.'" *Obsidian Fin. Grp., LLC v. Cox*, 2012 WL 1065484, at *7. In ruling on the new trial motion, the district court initially suggested that Cox had waived those arguments by not objecting to the jury instructions, but in the end again treated them on the merits and rejected them. Under the facts of this case, Cox preserved the issues raised in her motion for new trial for review.

**B.**

The Supreme Court's landmark opinion in *New York Times Co. v. Sullivan* began the construction of a First Amendment framework concerning the level of fault required for defamation liability. 376 U.S. 254. *Sullivan* held that

when a public official seeks damages for defamation, the official must show "actual malice"—that the defendant published the defamatory statement "with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 280. A decade later, *Gertz v. Robert Welch*, *Inc.*, held that the First Amendment required only a "negligence standard for private defamation actions." 418 U.S. 323, 350 (1974). This case involves the intersection between *Sullivan* and *Gertz*, an area not yet fully explored by this Circuit, in the context of a medium of publication—the Internet—entirely unknown at the time of those decisions.

### 1.

Padrick and Obsidian first argue that the *Gertz* negligence requirement applies only to suits against the institutional press. Padrick and Obsidian are correct in noting that *Gertz* involved an institutional media defendant and that the Court's opinion specifically cited the need to shield "the press and broadcast media from the rigors of strict liability for defamation." 418 U.S. at 348. We conclude, however, that the holding in *Gertz* sweeps more broadly.

The *Gertz* court did not expressly limit its holding to the defamation of institutional media defendants. And, although the Supreme Court has never directly held that the *Gertz* rule applies beyond the institutional press, it has repeatedly refused in non-defamation contexts to accord greater First Amendment protection to the institutional media than to other speakers. In *Bartnicki v. Vopper*, for example, in deciding whether defendants could be held liable under a statute banning the redistribution of illegally intercepted telephone conversations, the Court expressly noted that "we draw no distinction between the media respondents and" a non-

institutional respondent.  532 U.S. 514, 525 & n.8 (2001).
Similarly, in *Cohen v. Cowles Media Co.*, the Court held that
the press gets no special immunity from laws that apply to
others, including those—such as copyright law—that target
communication.  501 U.S. 663, 669–70 (1991).  And in *First
National Bank of Boston v. Bellotti*, a case involving
campaign finance laws, the Court rejected the "suggestion
that communication by corporate members of the institutional
press is entitled to greater constitutional protection than the
same communication by" non-institutional-press businesses.
435 U.S. 765, 782 n.18 (1978); s*ee also Henry v. Collins*, 380
U.S. 356, 357 (1965) (per curiam) (applying *Sullivan*
standard to a statement by an arrestee); *Garrison v.
Louisiana*, 379 U.S. 64, 67–68 (1964) (applying *Sullivan*
standard to statements by an elected district attorney);
*Sullivan*, 376 U.S. at 286 (applying identical First
Amendment protection to a newspaper defendant and
individual defendants).

The Supreme Court recently emphasized the point in
*Citizens United v. Federal Election Commission*:  "We have
consistently rejected the proposition that the institutional
press has any constitutional privilege beyond that of other
speakers."  558 U.S. 310, 352 (2010) (internal quotations
omitted).  In construing the constitutionality of campaign
finance statutes, the Court cited with approval, *id.*, the
position of five Justices in *Dun & Bradstreet, Inc. v.
Greenmoss Builders, Inc.*, that "in the context of defamation
law, the rights of the institutional media are no greater and no
less than those enjoyed by other individuals engaged in the
same activities." 472 U.S. 749, 784 (1985) (Brennan, J.,
dissenting); *id.* at 773 (White, J., concurring in the judgment)
("[T]he First Amendment gives no more protection to the

press in defamation suits than it does to others exercising their freedom of speech.").[1]

Like the Supreme Court, the Ninth Circuit has not directly addressed whether First Amendment defamation rules apply equally to both the institutional press and individual speakers.[2]  But every other circuit to consider the issue has held that the First Amendment defamation rules in *Sullivan* and its progeny apply equally to the institutional press and individual speakers.  *See, e.g.*, *Snyder v. Phelps*, 580 F.3d 206, 219 n.13 (4th Cir. 2009), *aff'd*, 131 S. Ct. 1207 (2011) ("Any effort to justify a media/nonmedia distinction rests on unstable ground, given the difficulty of defining with precision who belongs to the 'media.'"); *Flamm v. Am. Ass'n of Univ. Women*, 201 F.3d 144, 149 (2d Cir. 2000) (holding that "a distinction drawn according to whether the defendant is a member of the media or not is untenable");  *In re IBP Confidential Bus. Documents Litig.*, 797 F.2d 632, 642 (8th Cir. 1986); *Garcia v. Bd. of Educ.*, 777 F.2d 1403, 1410 (10th Cir. 1985); *Avins v. White*, 627 F.2d 637, 649 (3d Cir. 1980); *Davis v. Schuchat*, 510 F.2d 731, 734 n.3 (D.C. Cir. 1975).

We agree with our sister circuits.  The protections of the First Amendment do not turn on whether the defendant was a trained journalist, formally affiliated with traditional news entities, engaged in conflict-of-interest disclosure, went

---

[1] *Dun & Bradstreet* held that presumed and punitive damages are constitutionally permitted in defamation cases without a showing of actual malice when the defamatory statements at issue do not involve matters of public concern.  *See* 472 U.S. at 763.

[2] *But cf. Newcombe v. Adolf Coors Co.*, 157 F.3d 686, 694 n.4 (9th Cir. 1998) (citing *Gertz* in a defamation case in which the lead defendant was not a member of the institutional media).

beyond just assembling others' writings, or tried to get both sides of a story. As the Supreme Court has accurately warned, a First Amendment distinction between the institutional press and other speakers is unworkable: "With the advent of the Internet and the decline of print and broadcast media . . . the line between the media and others who wish to comment on political and social issues becomes far more blurred." *Citizens United*, 558 U.S. at 352. In defamation cases, the public-figure status of a plaintiff and the public importance of the statement at issue—not the identity of the speaker—provide the First Amendment touchstones.

We therefore hold that the *Gertz* negligence requirement for private defamation actions is not limited to cases with institutional media defendants. But this does not completely resolve the *Gertz* dispute. Padrick and Obsidian also argue that they were not required to prove Cox's negligence because *Gertz* involved a matter of public concern[3] and this case does not.

**2.**

The Supreme Court has "never considered whether the *Gertz* balance obtains when the defamatory statements involve no issue of public concern." *Dun & Bradstreet*, 472

---

[3] *Gertz* dealt with a libel claim brought by a Chicago lawyer who had been accused by the magazine of the John Birch Society of taking part in a Communist campaign to discredit local law enforcement agencies. *See Dun & Bradstreet*, 472 U.S. at 756.

OBSIDIAN FINANCE GROUP V. COX                13

U.S. at 757 (plurality opinion).[4]  But even assuming that *Gertz* is limited to statements involving matters of public concern, Cox's blog post qualifies.

The December 25 post alleged that Padrick, a court-appointed trustee, committed tax fraud while administering the assets of a company in a Chapter 11 reorganization, and called for the "IRS and the Oregon Department of Revenue to look" into the matter.  Public allegations that someone is involved in crime generally are speech on a matter of public concern.  *See, e.g.*, *Adventure Outdoors, Inc. v. Bloomberg*, 552 F.3d 1290, 1298 (11th Cir. 2008) (noting that accusations of "alleged violations of federal gun laws" by gun stores were speech on "a matter of public concern"); *Boule v. Hutton*, 328 F.3d 84, 91 (2d Cir. 2003) (holding that allegations of "fraud in the art market" involve "a matter of public concern").  This court has held that even consumer complaints of non-criminal conduct by a business can constitute matters of public concern.  *See Gardner v. Martino*, 563 F.3d 981, 989 (9th Cir. 2009) (finding that a business owner's refusal to give a refund to a customer who bought an allegedly defective product was a matter of public concern); *Manufactured Home Cmtys., Inc. v. Cnty. of San Diego*, 544 F.3d 959, 965 (9th Cir. 2008) (treating claim that a mobile home park operator charged excessive rent as a matter of public concern).

Cox's allegations in this case are similarly a matter of public concern.  Padrick was appointed by a United States Bankruptcy Court as the Chapter 11 trustee of a company that had defrauded its investors through a Ponzi scheme.  That company retained him and Obsidian to advise it shortly

---

[4] *Dun & Bradstreet* dealt only with the *Gertz* rule on presumed damages, not the *Gertz* negligence standard.  *See* 472 U.S. at 754–55.

14        OBSIDIAN FINANCE GROUP V. COX

before it filed for bankruptcy.  The allegations against Padrick and his company raised questions about whether they were failing to protect the defrauded investors because they were in league with their original clients.

Unlike the speech at issue in *Dun & Bradstreet* that the Court found to be a matter only of private concern, Cox's December 25 blog post was not "solely in the individual interest of the speaker and its specific business audience." 472 U.S. at 762 (plurality opinion).  The post was published to the public at large, not simply made "available to only five subscribers, who, under the terms of the subscription agreement, could not disseminate it further . . . ." *Id.*  And, Cox's speech was not "like advertising" and thus "hardy and unlikely to be deterred by incidental state regulation."  *Id.*

Because Cox's blog post addressed a matter of public concern, even assuming that *Gertz* is limited to such speech, the district court should have instructed the jury that it could not find Cox liable for defamation unless it found that she acted negligently.  *See Gertz*, 418 U.S. at 350.  The court also should have instructed the jury that it could not award presumed damages unless it found that Cox acted with actual malice.  *Id.* at 349.

## C.

Cox also argues that Padrick and Obsidian are "tantamount to public officials," because Padrick was a court-appointed bankruptcy trustee.  She contends that the jury therefore should have been instructed that, under the *Sullivan* standard, it could impose liability for defamation only if she

acted with actual malice.[5]  *See* 376 U.S. at 279–80.  We disagree.

Although bankruptcy trustees are "an integral part of the judicial process," *Lonneker Farms, Inc. v. Klobucher*, 804 F.2d 1096, 1097 (9th Cir. 1986), neither Padrick nor Obsidian became public officials simply by virtue of Padrick's appointment.  Padrick was neither elected nor appointed to a government position, and he did not exercise "substantial . . . control over the conduct of governmental affairs." *Rosenblatt v. Baer*, 383 U.S. 75, 85 (1966).  A Chapter 11 trustee can be appointed by the bankruptcy court for cause or when the best interests of the estate or creditors dictate.  11 U.S.C. § 1104(a).  But, an appointed trustee simply substitutes for, and largely exercises the powers of, a debtor-in-possession. 11 U.S.C. § 1107(a).  No one would contend that a debtor-in-possession has become a public official simply by virtue of seeking Chapter 11 protection, and we can reach no different conclusion as to the trustee who substitutes for the debtor in administering a Chapter 11 estate.

We also reject Cox's argument that Padrick and Obsidian were "tantamount to public officials" because they received compensation from the court for their efforts.  In *Gertz*, the Supreme Court held that there is "no such concept" as a "de facto public official," 418 U.S. at 351, and that a lawyer who had served briefly on several housing committees appointed by the mayor of Chicago, but who had never held "any remunerative governmental position," could not be

---

[5] Cox argued in her pretrial memorandum that Padrick and Obsidian were public figures, but contended in her motion for a new trial that Padrick was a public official.  She raises only the public official argument on appeal.

considered a public official. *Id.* Bankruptcy trustees do not receive remuneration from the government. Their compensation is drawn from the assets of the Chapter 11 estate they administer. *See* 11 U.S.C. § 326(a). They are not rendered public officials by virtue of that compensation, any more than is an expert witness compensated by the estate.

### III.

Padrick and Obsidian argue on cross-appeal that the district court erred in granting Cox summary judgment as to her other blog posts. Among other things, those posts accuse Padrick and Obsidian of engaging in "illegal activity," including "corruption," "fraud," "deceit on the government," "money laundering," "defamation," "harassment," "tax crimes," and "fraud against the government." Cox also claimed that Obsidian paid off "media" and "politicians" and may have hired a hit man to kill her.

In *Milkovich v. Lorain Journal Co.*, the Supreme Court refused to create a blanket defamation exemption for "anything that might be labeled 'opinion.'" 497 U.S. 1, 18 (1990). This court has held that "while 'pure' opinions are protected by the First Amendment, a statement that 'may . . . imply a false assertion of fact' is actionable." *Partington v. Bugliosi*, 56 F.3d 1147, 1153 (9th Cir. 1995) (quoting *Milkovich*, 497 U.S. at 19). We have developed a three-part test to determine whether a statement contains an assertion of objective fact. *Unelko Corp. v. Rooney*, 912 F.2d 1049, 1053 (9th Cir. 1990). The test considers "(1) whether the general tenor of the entire work negates the impression that the defendant was asserting an objective fact, (2) whether the defendant used figurative or hyperbolic language that negates that impression, and (3) whether the statement in question is

susceptible of being proved true or false." *Partington*, 56 F.3d at 1153.

As to the first factor, the general tenor of Cox's blog posts negates the impression that she was asserting objective facts. The statements were posted on obsidianfinancesucks.com, a website name that leads "the reader of the statements [to be] predisposed to view them with a certain amount of skepticism and with an understanding that they will likely present one-sided viewpoints rather than assertions of provable facts." *Obsidian Fin. Grp.*, 812 F. Supp. 2d at 1232. The district judge correctly concluded that the "occasional and somewhat run-on[,] almost 'stream of consciousness'-like sentences read more like a journal or diary entry revealing [Cox's] feelings rather than assertions of fact." *Id.* at 1233.

As to the second factor, Cox's consistent use of extreme language negates the impression that the blog posts assert objective facts. Cox regularly employed hyperbolic language in the posts, including terms such as "immoral," "really bad," "thugs," and "evil doers." *Id.* (quoting blog posts). Cox's assertions that "Padrick hired a 'hit man' to kill her" or "that the entire bankruptcy court system is corrupt" similarly dispel any reasonable expectation that the statements assert facts. *Id.*

And, as to the third factor, the district court correctly found that, in the context of a non-professional website containing consistently hyperbolic language, Cox's blog posts are "not sufficiently factual to be proved true or false." *Id.* at 1234. We find no error in the court's application of the *Unelko* test and reject the cross-appeal.

**IV.**

We reverse the district court's judgment against Cox concerning the December 25, 2010 blog post and remand for a new trial consistent with this opinion. We affirm the district court's summary judgment on Cox's other blog posts. All parties are to bear their own costs on appeal.

**AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.**